UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONI MARSHBANKS, et al., | No. 2:13-cv-2400-MCE-KJN PS |
| Plaintiffs, | |
| v. | ORDER |
| CITY OF STOCKTON, et al., | |
| Defendants. | |

Toni Marshbanks and Dorothe Marshbanks (collectively "plaintiffs"), who are proceeding without counsel in this action, have requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915.[1] (ECF Nos. 2, 3.) Plaintiffs' applications in support of their requests to proceed in forma pauperis make the showing required by 28 U.S.C. § 1915(a)(1) with respect to both plaintiffs. Accordingly, the undersigned grants plaintiffs' requests to proceed in forma pauperis.

The determination that plaintiffs may proceed in forma pauperis does not complete the required inquiry. Pursuant to 28 U.S.C. § 1915(e)(2), the court is directed to dismiss the case at any time if it determines that the allegation of poverty is untrue, or if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against an immune defendant.

---

[1] This action proceeds before the undersigned pursuant to Eastern District of California Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).

1

1    A claim is legally frivolous when it lacks an arguable basis either in law or in fact.
2    Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th
3    Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an
4    indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,
5    490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully
6    pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th
7    Cir. 1989); Franklin, 745 F.2d at 1227.

8    To avoid dismissal for failure to state a claim, a complaint must contain more than "naked
9    assertions," "labels and conclusions," or "a formulaic recitation of the elements of a cause of
10   action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).  In other words,
11   "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory
12   statements do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Furthermore, a claim
13   upon which the court can grant relief must have facial plausibility.  Twombly, 550 U.S. at 570.
14   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to
15   draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129
16   S. Ct. at 1949.  When considering whether a complaint states a claim upon which relief can be
17   granted, the court must accept the allegations as true, Erickson v. Pardus, 127 S. Ct. 2197, 2200
18   (2007), and construe the complaint in the light most favorable to the plaintiff, see Scheuer v.
19   Rhodes, 416 U.S. 232, 236 (1974).

20   Pro se pleadings are liberally construed.  See Haines v. Kerner, 404 U.S. 519, 520-21
21   (1972); Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1988).  Unless it is clear
22   that no amendment can cure the defects of a complaint, a pro se plaintiff proceeding in forma
23   pauperis is entitled to notice and an opportunity to amend before dismissal.  See Noll v. Carlson,
24   809 F.2d 1446, 1448 (9th Cir. 1987); Franklin, 745 F.2d at 1230.

25   **I.     Plaintiffs' Allegations**
26   Plaintiffs make the following allegations in their complaint.  The City of Stockton
27   ("Stockton") and San Joaquin County (collectively "defendants") engaged in a united effort to
28   take peoples' property without due process.  (Compl. at 1.)  Through this effort, defendants took

unidentified "property" belonging to plaintiff Toni Marshbanks without due process and are now in the process of taking plaintiff Dorothe Marshbanks' "property" without due process. (Id.)

Plaintiffs further allege that Stockton harasses people by citing them when no violation has taken place and that both defendants then attach "enormous fines and fees to the property tax, without due process." (Id.) In addition to this practice, plaintiffs assert that Stockton also engages in the practice of abating its own property and "charg[ing] it to the adjacent property owner." (Id. at 2.)

Plaintiffs also allege that Stockton discriminatorily "sweeps" certain neighborhoods and "cite[s] people unequally and unfairly." (Id.) Plaintiffs claim that defendants "have placed a dump in the residential area of East Stockton," that "[t]rash blows out of this dump and litters the streets and people's [sic] yards," and that "Stockton then does sweeps, and fines property owners for having the City's mess in their yards." (Id.)

Plaintiffs allege that someone must first pay a fee in order to contest a citation issued by Stockton and that the judges located in Stockton have been hired by the City, which means that they "will not go against the City of Stockton, even when the City of Stockton is clearly wrong." (Id.)

Plaintiffs further allege that defendants allow for "people's property to be stolen" because the Stockton police allow persons "who are in the process of stealing" to "enter and remove things from the house." (Id.)

Plaintiffs also allege that defendants "have removed the library from East Stockton," which has required people to travel downtown to the central library. (Id.) In addition, plaintiffs claim that "[t]he outside mail boxes have been removed from the post office in East Stockton," which limits peoples' ability to mail letters and is "an inconvenience to many people." (Id. at 2-3.)

Plaintiffs allege that Stockton discriminates against disabled persons "by having limited disable [sic] access, and limited disable [sic] parking at City Hall." (Id. at 3.) In particular, plaintiffs allege that "there are only a few disable [sic] parking spaces near the entrance" to City Hall, that "most of the parking near the entrance [to City Hall] is for city vehicles only," and that

there are signs posted prohibiting "the drop off of anyone at the entrance" to City Hall. (Id.) Furthermore, plaintiffs allege that "there is limited access to the Library" and that [d]uring the asparagus festival, disable [sic] parking is removed all together [sic], even at the library." (Id.) In addition, plaintiffs assert that they were told at the Arena that disabled parking was located across the street, but that when they went across the street they were told that there was no disabled parking. (Id.)

Plaintiffs further claim that defendant "San Joaquin County discriminates against the disable [sic] by having doors to the San Joaquin County Administration Building, that are too heavy for anyone to open." (Id.) They also allege that "[t]he automatic button [to open the doors] is difficult to locate," "is not located near the doors," and "is difficult to push." (Id.)

Plaintiffs claim that Stockton "charges residents a utility tax," but does not state that the proceeds from this tax go to the City of Stockton. (Id.)

Plaintiffs further allege that defendants "do not provide equal protection" because "[t]hey will not investigate . . . crimes that occur in certain neighborhoods and will not prosecute a perpetrator of these crimes when caught, and because "[v]ictims cannot get any information." (Id.)

Plaintiffs also allege that one of them was "pulled over by a Stockton Unified District police [sic]" and was subsequently beaten.[2] (Id.) The allegedly beaten plaintiff called the Stockton Police, but they would not come, and later made several attempts to file a report with the Stockton Police, but they would not let her file. (Id. at 3-4.)

Finally, plaintiffs allege that "Stockton discriminates against renters" by engaging in a practice it calls "rent inspections," which most of the time "leaves the renter evicted." (Id. at 5.)

Plaintiffs request relief in the form of monetary damages and an injunction requiring defendants to do the following: remove the tax liens placed on the property located at 417 S. Broadway Ave. in Stockton and "[r]emove this property from the tax lien sale"; "[s]top harassing people"; "[g]ive due process"; "[t]ake care of [their] own property"; "[t]reat people fairly and

---

[2] Plaintiffs do not specify which one of them was the alleged victim of this attack and only refer to the victim by the singular pronoun "I."

4

equally"; [r]emove the dump from East Stockton" and "[t]est the ground water, etc., at this site, as well as the former dump cite [sic] on Wilson Way in East Stockton"; "[g]ive equal protection, investigate, and prosecute";[p]ut a Library in East Stockton"; [s]top mail thief";"[g]ive the disable access";"[p]ut on the utility bill that the tax collected by the City of Stockton, is a tax collected by the City of Stockton for the City of Stockton"; "[i]nvestigate and prosecute the SUSD police"; and put laws "in place that protects the renters from the landlord." (Id. at 4-5.)

Plaintiffs do not expressly state which causes of action they are alleging against which defendants. However, based on a liberal construction of the allegations in the complaint, it appears that plaintiffs attempt to assert the following federal law claims: (1) a procedural due process claim under the Due Process Clause of the Fourteenth Amendment, (2) a claim under the Equal Protection Clause of the Fourteenth Amendment, (3) a claim under the Americans with Disabilities Act ("ADA"), and (4) an excessive force claim under the Fourth Amendment.

**II.     Federal Question Requirement**

A federal district court generally has original jurisdiction over a civil action when: (1) a federal question is presented in an action "arising under the Constitution, laws, or treaties of the United States" or (2) there is complete diversity of citizenship and the amount in controversy exceeds $75,000. See 28 U.S.C. §§ 1331, 1332(a). District courts have diversity jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and the action is between: "(1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and (4) a foreign state . . . as plaintiff and citizens of a State or of different States." 28 U.S.C. § 1332; see also Geographic Expeditions, Inc., 599 F.3d at 1106.

Here, diversity of citizenship jurisdiction is not present because all parties are located in a single state, California.[3] Thus plaintiffs must raise at least one claim against defendants giving

---

[3] Plaintiffs do not expressly claim that they are residents of California; however, the court presumes that they are residents of California because plaintiffs' mailing address is located in Stockton, California. The City of Stockton is a municipality in California and San Joaquin County is a county in California. Accordingly, complete diversity is not present in this case.

rise to a federal question for this court to have jurisdiction over this case. See 28 U.S.C. § 1367; Wayne v. DHL Worldwide Express, 294 F.3d 1179, 1183, n.2 (9th Cir. 2002) (citing Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987)).

### III.     Plaintiffs' Alleged Claims Under Federal Law

#### A. Procedural Due Process

Under the Fourteenth Amendment, no state may deprive any person of life, liberty, or property without due process. U.S. Const. Amend. XIV, § 1. Procedural due process generally guarantees procedural fairness, usually in the form of notice and an opportunity to be heard, and requires plaintiffs to allege facts that satisfy the following two-step test. Zinermon v. Burch, 494 U.S. 113, 125 (1990). A litigant must first demonstrate that she was deprived of a liberty or property interest protected by the Due Process Clause. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 459-60 (1989). Next, she must allege facts sufficient to show that show that the procedures attendant upon the deprivation were not constitutionally sufficient. Id.

Plaintiffs assert that the defendants either took or are in the process of taking plaintiffs' property without due process and that defendants have attached enormous fines and fees to "the property tax" without due process. (Compl. at 3.) However, plaintiffs have not pled any factual content to support these conclusory allegations. Plaintiffs make no allegations regarding what, if any, process was provided in connection with these alleged deprivations. Instead, they merely assert that they did not receive "due process." Moreover, plaintiffs' allegations are insufficient to show that they had a "legitimate claim of entitlement" to their unidentified "property," which is required to demonstrate that they were deprived of a property interest protected by the Due Process Clause. Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). Accordingly, plaintiffs fail to allege facts sufficient to state a procedural due process claim against defendants.

#### B. Equal Protection

Generally, the Equal Protection Clause requires the State to treat all similarly situated people equally. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Equal protection is violated when decision-makers undertake a course of action because of, not merely

1  in spite of, the adverse effects upon an identifiable group.  See Ashcroft v. Iqbal, 129 S. Ct. 1937,
2  1949-50 (2009); McCleskey v. Kemp, 481 U.S. 279, 292-300 (1987).  To sufficiently allege an
3  equal protection claim, "a plaintiff must show that the defendants acted with an intent or purpose
4  to discriminate against the plaintiff based upon membership in a protected class."  Barren v.
5  Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).  When governmental actions are challenged, the
6  level of scrutiny under which the action is reviewed depends upon the class of persons affected by
7  the decision.  See, e.g., U.S. v. Virgina, 518 U.S. 515, 533 (1996) (gender-based classifications
8  must serve important governmental objectives, and the discriminatory means employed to serve
9  those objective must be substantially related); Heller v. Doe by Doe, 509 U.S. 312, 319-20 (1993)
10 (classifications that do not involve fundamental rights nor proceed along suspect lines do not run
11 afoul of equal protection if there is a rational relationship between the disparity of treatment and
12 some legitimate governmental purpose); Richmond v. J.A. Croson Co., 488 U.S. 469, 520
13 (1989) (Scalia J., concurring in judgment) (strict scrutiny must be applied to all governmental
14 classification by race).

15      Plaintiffs claim that defendants have not provided equal protection because they do "not
16 investigate burglaries, auto thief [sic], or any such crimes that occur in certain neighborhoods[,]"
17 or give "[v]ictims … any information" when alleged perpetrators are caught.  (Compl. at 3.)
18 Plaintiffs further allege that Stockton discriminatorily "sweeps" certain neighborhoods and
19 "cite[s] people unequally and unfairly."  (Id. at 2.)  However, these allegations, without more, are
20 insufficient to state a claim.

21      As an initial matter, plaintiffs do not allege that they themselves have been impacted by
22 the alleged discriminatory practices, or that they otherwise have standing to make such an equal
23 protection claim. Whitmore v. Arkansas, 495 U.S. 149, 154 (1990) (a person seeking federal
24 jurisdiction must first establish the requisite standing to sue).  In order to have standing, plaintiffs
25 must allege and prove (1) an injury in fact—a harm suffered by them that is concrete and actual
26 or imminent, not conjectural or hypothetical; (2) causation—a traceable connection between the
27 harm and the complained-of conduct of the defendant; and (3) redressability—a likelihood that
28 the requested relief will redress the alleged injury.  Steel Co. v. Citizens for a Better Environment,

1  523 U.S. 83, 102-103 (1998) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992);

2  <u>Whitemore v. Arkansas</u>, 495 U.S. 149, 155 (1983); <u>Simon v. Eastern Ky. Welfare Rights</u>

3  <u>Organization</u>, 426 U.S. 26, 41-42, 45-46 (1976); <u>Warth v. Seldin</u>, 422 U.S. 490, 505 (1975)).

4  Plaintiffs do not allege any facts showing that they have actually suffered or will imminently

5  suffer harm as a result of the above alleged actions by defendants.  In fact, plaintiffs do not even

6  allege their own involvement in connection with any of the facts alleged in furtherance of their

7  equal protection claims.

8  　　　　Furthermore, plaintiffs do not allege any facts indicating that they belong to any particular

9  "class" of persons or that defendants acted with an intent or purpose to discriminate against

10  plaintiffs based on their membership in that "class."  Accordingly, plaintiffs allege insufficient

11  facts to show that defendants violated their rights under the Equal Protection Clause.  <u>See</u> <u>Barren</u>,

12  152 F.3d at 1194.

13  　　　　Plaintiffs also claim that defendants have violated plaintiffs' rights by deciding to not

14  prosecute perpetrators of the crimes plaintiffs describe in their complaint.  (Compl. at 3.)

15  However, in "our criminal justice system, the Government retains 'broad discretion' as to whom

16  to prosecute."  <u>Wayte v. U.S.</u>, 470 U.S. 598, 607 (1985) (citing <u>United States v. Goodwin</u>, 457

17  U.S. 368, 380, n. 11 (1982)).  Accordingly, allegations regarding a general exercise of

18  prosecutorial discretion to not prosecute does not, by itself, state a claim upon which relief can be

19  granted.

20  　　　　**C. Americans with Disabilities Act**

21  　　　　To establish a prima facie case under the Americans with Disabilities Act ("ADA"), a

22  plaintiff must show that she (1) is disabled, (2) was denied full and equal treatment because of her

23  disability; and (3) that defendants' facility is a place of public accommodation.  <u>Hubbard v. Twin</u>

24  <u>Oaks Health and Rehabilitation Center</u>, 408 F. Supp.2d 923, 929 (E.D. Cal. Nov. 12, 2004).

25  　　　　Plaintiffs allege that the Stockton provides limited disabled parking at City Hall, no

26  disabled parking at the asparagus festival, "limited access to the Library," and does not allow

27  individuals to be dropped off near the entrance of City Hall.  They further allege that the San

28  Joaquin County Administrative Building has heavy doors and an automatic open button is hard to

locate and difficult to push. (Compl. at 3.) Even assuming that the locations plaintiffs describe in their alleged facts are places of public accommodation, plaintiffs have not alleged that full and equal treatment has been denied to them *because of* their disability. Moreover, plaintiffs also fail to allege that they are disabled. Accordingly, plaintiffs do not allege facts sufficient to state an ADA claim.

**D. Excessive Force**

Plaintiffs also allege the following:

> I was pulled over by a Stockton Unified School District police. The SUSD police beat me. The City of Stockton police were called and they would not come. I went to the police station to file a report and they would not let me. I made several attempts to file a report.

(Compl. at 3.)

Excessive force claims may be brought against law enforcement officials under 42 U.S.C. § 1983. See Baker v. McCollan, 443 U.S. 137 (1979). However, section 1983 is not a source of substantive rights. Id. at 144, n.3. Section 1983 provides a method for vindicating federal rights conferred elsewhere. Id. "In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." Graham v. Connor, 490 U.S. 386, 388 (1989) (citing Baker, 443 U.S. at 140).

Here, a liberal construction of plaintiffs' above allegations reveals a potential excessive use of force clam under the Fourth Amendment. See Graham, 490 U.S. at 394; see also Tennessee v. Garner, 471 U.S. 1, 7-22 (1985) (Fourth Amendment standard is used to analyze a claim of excessive force to effect arrest). Under the Fourth Amendment, the amount of force a law enforcement official uses is excessive when it is not objectively reasonable given the surrounding facts and circumstances. Graham, 490 U.S. at 388; see also Scott v. United States, 436 U.S. 128, 137-39 (1978); Terry v. Ohio, 392 U.S. 1, 21 (1968) (the reasonableness of a search or seizure must be judged by an objective standard). Here, however, plaintiffs' allegations in connection with a possible excessive force claim are directed at the "SUSD police," not a

particular law enforcement official. Accordingly, to state a cognizable Fourth Amendment claim against defendants, both of which are municipal entities, plaintiffs would need to allege facts sufficient to show that defendants' policy or custom caused the alleged constitutional deprivation. Monell v. New York City Dep't of Social Services, 436 U.S. 658, 691-94 (1978).

Because there is no respondeat superior liability under section 1983, counties and municipalities may be sued under section 1983 only upon a showing that an official policy or custom caused the constitutional tort. Id. Stated differently, "[i]t is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable under § 1983." Canton v. Harris, 489 U.S. 378, 385 (1989). "[L]ocal governments, like any other § 1983 'person,' . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Monell, 436 U.S. at 690-91. A local governmental entity may "be liable if it had a policy or custom of failing to train its employees and that failure to train caused the constitutional violation. In particular . . . the inadequate training of police officers could be characterized as the cause of the constitutional tort if – and only if – the failure to train amounted to 'deliberate indifference' to the rights of persons with whom the police come into contact." Collins v. City of Harker Heights, 503 U.S. 115, 123-24 (1992).

Here, plaintiffs fail to allege any facts even remotely suggesting that a policy or custom of either defendant was the cause of the alleged Fourth Amendment deprivation. Moreover, even if plaintiffs were able to show that a governmental custom or policy led to a constitutionally impermissible use of force, the court cannot grant the relief requested because plaintiffs have not named the Stockton Unified School District Police Department ("SUSDPD"), the allegedly responsible entity, as a party in this case.

The SUSDPD was established by the Stockton Unified School District—a legal entity that is separate and distinct from Stockton and San Joaquin County—under California Education Code section 38000. SUSDPD officers are sworn under California Penal Code section 830.32 and have statutory powers of arrest anywhere in the state. SUSDPD's command structure is separate from the Stockton Police Department, and its Chief reports to the Stockton Unified

1  School District Board of Education, not to the City of Stockton or San Joaquin County.
2  Accordingly, neither defendant currently named in this case is responsible for the actions of
3  SUSDPD officers or the promulgation of the SUSDPD's customs or policies.
4  Relief under the Fourth Amendment cannot be granted because neither the SUSDPD nor
5  the SUSDPD officer who allegedly committed the beating described in the complaint have been
6  properly named as a party in this action. Accordingly, plaintiff's allegations concerning the
7  SUSDPD incident do not give rise to a cognizable excessive force claim against either of the
8  named defendants under the Fourth Amendment.
9  Plaintiffs also allege that the "City of Stockton police were called and … would not come"
10 or allow plaintiffs "to file a report." (Compl. at 3-4). Under California Government Code section
11 845, "[n]either a public entity nor a public employee is liable for failure to … provide police
12 protection service." The "statutory scheme … makes it clear that failure to provide adequate
13 police protection [or arrest a person who is violating the law] will not result in governmental
14 liability[.]" Hartzler v. City of San Jose, 46 Cal.App.3d 6, 9 (1975), quoting Antique Arts Corp.
15 v. City of Torrance, 39 Cal.App.3d 588, 592-93 (1974); see also County of Sacramento v.
16 Superior Court, 8 Cal. 3d 479, 485 (1972) (interpreting Cal. Gov. Code. § 845.8). Accordingly,
17 this allegation is also insufficient to state a claim against either named defendant.

18 **IV.     Plaintiffs' Other Allegations and Lack of Supplemental Jurisdiction**

19 Plaintiffs also make a number of other allegations in their complaint regarding the
20 placement of a garbage dump, the relocation of the library from East Stockton, the removal of
21 mailboxes from the post office, and Stockton's charging of a utility tax and engagement in "rent
22 inspections." However, without more, none of these allegations, either by themselves or
23 collectively, give rise to a cognizable cause of action under federal law. Accordingly, to the
24 extent that plaintiffs' allegations could support claims under state law, this court lacks
25 supplemental jurisdiction to hear them because, for the reasons stated above, none of plaintiff's
26 allegations give rise to a claim under federal law. 28 U.S.C. § 1367.
27 ////
28 ////

11

### V. Conclusion

Plaintiffs' complaint does not presently comply with Rule 8, nor does it presently state a claim upon which relief may be granted under § 1983. Accordingly, the complaint is dismissed with leave to amend pursuant to 28 U.S.C. § 1915(e)(2) to permit plaintiffs an opportunity to file an amended pleading that complies with Federal Rule of Civil Procedure 8, clarifies whether they allege violations of any of their constitutional rights, includes additional factual allegations that might support claims for such violations, and provides more context to plaintiffs' wide-ranging accusations. Such amended pleading shall also include allegations regarding the basis for this court's jurisdiction. Plaintiffs shall file an amended pleading within 45 days of the date of this order. The amended pleading shall be titled "First Amended Complaint."

Plaintiffs are informed that the court cannot refer to prior pleadings in order to make an amended complaint complete. Eastern District Local Rule 220 requires that an amended complaint be complete in itself. This requirement is because, as a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) ("The amended complaint supersedes the original, the latter being treated thereafter as non-existent."). Accordingly, once a plaintiff files an amended complaint, the original complaint no longer serves any function in the case. Defendants not named in an amended complaint are no longer defendants. Ferdik, 963 F.2d at 1262.

Plaintiffs are also hereby informed that they are obligated to comply with court orders and the rules of litigation procedure, notwithstanding their status as pro se litigants. Eastern District Local Rule 110 provides that "[f]ailure of counsel or of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions authorized by statute or Rule or within the inherent power of the Court." Moreover, Eastern District Local Rule 183(a) provides, in part:

> Any individual representing himself or herself without an attorney is bound by the Federal Rules of Civil or Criminal Procedure, these Rules, and all other applicable law. All obligations placed on "counsel" by these Rules apply to individuals appearing in propria persona. Failure to comply therewith may be ground for dismissal . . . or any other sanction appropriate under these Rules.

See also King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) ("Pro se litigants must follow the same rules of procedure that govern other litigants."). Case law is in accord that a district court may impose sanctions, including involuntary dismissal of a plaintiff's case pursuant to Federal Rule of Civil Procedure 41(b), where that plaintiff fails to prosecute his or her case or fails to comply with the court's orders. See Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991) (recognizing that a court "may act *sua sponte* to dismiss a suit for failure to prosecute"); Hells Canyon Preservation Council v. U.S. Forest Serv., 403 F.3d 683, 689 (9th Cir. 2005) (stating that courts may dismiss an action pursuant to Federal Rule of Civil Procedure 41(b) *sua sponte* for a plaintiff's failure to prosecute or comply with the rules of civil procedure or the court's orders); Ferdik, 963 F.2d at 1260 ("Pursuant to Federal Rule of Civil Procedure 41(b), the district court may dismiss an action for failure to comply with any order of the court."), cert. denied, 506 U.S. 915 (1992); Thompson v. Housing Auth. of City of L.A., 782 F.2d 829, 831 (9th Cir. 1986) (per curiam) (stating that district courts have inherent power to control their dockets and may impose sanctions including dismissal), cert. denied, 479 U.S. 829 (1986). Accordingly, plaintiffs' failure to file an amended pleading by the deadline stated herein will result in a recommendation that this action be dismissed.

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiffs' requests to proceed in forma pauperis (ECF Nos. 2, 3) are GRANTED.

2. Plaintiffs' complaint is DISMISSED with LEAVE TO AMEND so that plaintiffs can correct the pleading deficiencies described herein. The amended pleading shall be titled "First Amended Complaint."

3. Plaintiffs are granted 45 days from the entry of this order to file an amended complaint that is complete in itself. The amended complaint must bear the docket number assigned to this case and must be labeled "First Amended Complaint."

4. Failure to timely file an amended complaint that complies with this order and the Federal Rules of Civil Procedure may result in a recommendation that the action be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(b).

////

IT IS SO ORDERED.

Dated: April 9, 2014

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE